IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| AMY MARIE ROBERTSON, ) | |
| ) | |
| Plaintiff ) | Civil No. 07-1709-HU |
| ) | |
| v. ) | FINDINGS AND |
| ) | RECOMMENDATION |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

RORY LINERUD
P.O. Box 1105
Salem, Oregon 97308

    Attorney for Plaintiff

KARIN J. IMMERGUT
United States Attorney
NEIL J. EVANS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2904

JOANNE B. DANTONIO
Special Assistant U.S. Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 901
Seattle, WA 98104-7075

    Attorneys for Defendant

HUBEL, Magistrate Judge:

Plaintiff Amy Marie Robertson ("Robertson") seeks judicial review of the Social Security Commissioner's final decision denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"). This court has jurisdiction under 42 U.S.C. § 405(g). For the following reasons, the Commissioner's decision should be affirmed.

## PROCEDURAL BACKGROUND

Born in 1978, Robertson completed high school. Tr. 100, 118.[1] Between 1998 and 2005 Robertson worked as a motel and janitorial service housekeeper. Tr. 115.

Robertson applied for DIB and SSI on August 17, 2005, alleging disability since September 15, 2004, due to depression, obsessive compulsive disorder, and social anxiety. Tr. 97-102, 114. The Commissioner denied Robertson's applications initially and upon reconsideration. Tr. 34-50. A hearing was held before an Administrative Law Judge ("ALJ") on March 15, 2007. Tr. 288-336. On April 23, 2007, the ALJ issued a decision finding Robertson not disabled. Tr. 15-29. The Appeals Council accepted additional evidence into the record, but denied Robertson's request for reconsideration. Tr. 6-9. The ALJ's decision became final on October 25, 2007. Tr. 6.

## MEDICAL BACKGROUND

Robertson first sought mental health counseling from therapist Sera Benson-Arb, M.A., between March and July 2004. Tr. 236-40. Benson-Arb initially assessed anxiety and shame

---

[1] Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer (Docket #9).

symptoms. Tr. 241. Patricia Jarrett, PMHNP ("psychiatric mental health nurse practitioner") evaluated Robertson at Lincoln County Mental Health and assessed diagnoses of obsessive-compulsive disorder and borderline personality disorder, with rule-out diagnoses of post-traumatic stress syndrome and generalized anxiety disorder. Tr. 235. Jarrett continued to assess these diagnoses in September and October 2004 and concurrently managed Robertson's antidepressant therapy. Tr. 228, 230.

Robertson sought treatment for knee, hip, and ankle pain in February 2005. Tr. 182. X-ray examination of her lumbar spine was normal. Tr. 184. In July 2005 nurse practitioner Sue Kruell noted chronic back pain and prescribed Vicodin. Tr. 181.

Examining psychologist Dr. Duvall evaluated Robertson for Disability Determination Services ("DDS")[2] on September 26, 2005. Tr. 175-79. Dr. Duvall noted Robertson's reported history and conducted a mental status examination. Tr. 175-78. Dr. Duvall diagnosed social phobia, obsessive-compulsive disorder, post-traumatic stress disorder ("PTSD"), dysthymia, history of cannabis abuse, "caffeinism," and borderline personality disorder. Tr. 178.

Robertson received counseling from Valerie Peterson, B.A., in September and October 2005. Tr. 211-15. In January 2006 nurse Jarrett continued to assess obsessive-compulsive disorder, borderline personality disorder, generalized anxiety disorder, social phobia, and a rule-out PTSD diagnosis. Tr. 258. In February 2006 nurse Kreull assessed a skin infection and chronic back pain, again prescribing Vicodin. Tr. 250-51.

General practitioner Dr. Cowen assessed Robertson with upper back pain, eustachian tube

---

[2]DDS is a federally-funded state agency that makes eligibility determinations on behalf and under the supervision of the Social Security Administration pursuant to 42 U.S.C. § 421(a) and 20 C.F.R. §§ 404.1503, 416.903.

3 - FINDINGS AND RECOMMENDATION

dysfunction, and history of depression with "possibly [sic] anxiety" in April 2006. Tr. 252-54. The record is silent until November 2006 when nurse practitioner Sue Bassett diagnosed PTSD, attention-deficit hyperactivity disorder ("ADHD"), and an anxiety disorder. Tr. 281. In January 2007 Patti Bear, M.A., assessed Robertson with obsessive-compulsive disorder, generalized social phobia, and ADHD "by history." Tr. 278.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920, *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If she is, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve month duration requirement. 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.909, 416.920(a)(4)(ii). If the claimant does not have such a severe impairment, she is not disabled. *Id.*

At step three, the ALJ determines whether the severe impairment medically meets or equals a "listed" impairment in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.920(a)(4)(iii). If the impairment is determined to equal a listed impairment, the claimant is disabled.

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). This evaluation includes assessment of the claimant's statements regarding her impairments. 20

4 - FINDINGS AND RECOMMENDATION

C.F.R. §§ 404.1545(a)(3), 404.945(a)(3). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by her impairments. 20 C.F.R. §§ 404.1520(e), 404.920(e), Social Security Ruling ("SSR") 96-8p.

The ALJ uses this information to determine if the claimant can perform her past relevant work at step four. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.920(a)(4)(iv). If the claimant can perform her past relevant work, she is not disabled. If the ALJ finds that the claimant's RFC precludes performance of her past relevant work the ALJ proceeds to step five.

At step five the Commissioner must determine if the claimant is capable of performing work existing in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(f), 416.920(a)(4)(v), 404.920(f) *Yuckert*, 482 U.S. at 142; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). If the claimant cannot perform such work, she is disabled. *Id.*

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098. If the process reaches the fifth step, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.* at 1100. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 404.1566, 404.1520(g), 416.966, 416.920(g).

Robertson challenges the ALJ's evaluation of the medical evidence, Robertson's own testimony, her RFC, and the ALJ's conclusions at steps four and five that Robertson could perform her past relevant work as well as additional work in the national economy.

///

5 - FINDINGS AND RECOMMENDATION

## THE ALJ'S FINDINGS

The ALJ found Robertson's social phobia, dysthymia, and "obsessive compulsive disorder or generalized anxiety disorder" to be "severe" impairments at step two in the sequential proceedings. Tr. 18. At step three, the ALJ found that Robertson's impairments did not medically meet or equal a listed impairment. Tr. 19. The ALJ assessed Robertson's RFC:

> [T]he claimant has the residual functional capacity to do all levels of physical work. She has no physical limitations. She can do simple routine tasks. She cannot have contact with the general public. She can have occasional interaction with coworkers and can do no teamwork.

Tr. 19. Drawing upon the testimony of a vocational expert ("VE"), the ALJ found Robertson could perform her past relevant work as a cleaner/housekeeper. Tr. 28. The ALJ also found that the VE's testimony established that she could work as a commercial/institutional cleaner, industrial sweeper/cleaner, or small products assembler. Tr. 29. The ALJ therefore found Robertson not disabled.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Commissioner for Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th 2007)(citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. *Id.* (citing *Robbins v. Social Security Administration*, 466 F.3d 880, 882 (9th Cir. 2006)); *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

6 - FINDINGS AND RECOMMENDATION

Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading.  *Id.*; *Batson*, 359 F.3d at 1193.

## DISCUSSION

Robertson contends that the ALJ inappropriately evaluated her mental impairments and her obesity, failed to develop the record, and improperly evaluated her testimony.  Roberston consequently asserts that the ALJ inappropriately evaluated her RFC and made erroneous findings that she was not disabled at steps four and five.

### I.      Robertson's Mental Impairments

Robertson asserts that the ALJ improperly assessed her post-traumatic stress disorder ("PTSD"), obsessive-compulsive disorder, and borderline personality disorder.  Robertson also claims the ALJ erroneously omitted work place restrictions suggested by examining psychologist Dr. Duvall and reviewing psychologist Dr. Hennings.

#### A.      PTSD

The ALJ found Robertson's PTSD non-severe at step two in the sequential proceedings.  Tr. 19.  The ALJ stated, "This diagnosis is made at times in the record, at times mentioned as a "rule out" condition, and in the most recent records not included as a diagnosis."  *Id.*  The ALJ added that Robertson's PTSD is "medically determinable, but the record does not show that it gives claimant more than minimal functional limits."  *Id.*

The ALJ noted Dr. Duvall's PTSD diagnosis, and concluded, "the record does not sufficiently support . . . PTSD."  Tr. 24.  The ALJ also noted that DDS reviewing psychologist Dr. Hennings included Robertson's PTSD in his assessment (tr. 193), but concluded, "great weight is given to the functional abilities assessments, but the record does not support that

7 - FINDINGS AND RECOMMENDATION

claimant has . . . PTSD." Tr. 25. The ALJ did not offer explanation for this finding.

Dr. Duvall is the only acceptable medical source who addressed Robertson's mental impairments. His opinion is therefore uncontradicted, and the ALJ must provide "clear and convincing" reasons for rejecting his opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). The ALJ may do this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof and making findings." *Reddick*, 157 F.3d at 725. The ALJ's finding that Robertson's PTSD is "medically determinable" but that "the record does not support" Dr. Duvall's PTSD assessment does not amount to such a finding. The consequences of the ALJ's omission are discussed below.

### B. Obsessive-Compulsive Disorder

Dr. Duvall also made an obsessive compulsive disorder diagnosis. Tr. 178. The ALJ found Robertson's "obsessive-compulsive or generalized anxiety disorder" severe at step two in the sequential proceedings. Tr. 18. The ALJ again stated, "great weight is given to . . . functional abilities assessments, but the record does not support that claimant has [obsessive-compulsive disorder]." Tr. 25. The ALJ elaborated that Robertson "cleans her house a lot but that is ordinary for someone with three small children in the house." Tr. 28.

These findings are again contradictory: the ALJ stated that he found Robertson's obsessive-compulsive disorder "severe," but also stated that the record does not support such a disorder. This analysis should not be sustained. The ALJ's remaining reasoning for rejecting Dr. Duvall's obsessive-compulsive disorder diagnosis is nearly identical to the ALJ's rejection of Dr. Duvall's PTSD assessment, and should not be sustained for the reasons articulated above.

8 - FINDINGS AND RECOMMENDATION

### C.    Borderline Personality Disorder

Robertson now claims the ALJ "gave no reason to reject [her] diagnosed condition of borderline personality disorder" and that the ALJ failed to find associated work place limitations. Pl.'s Opening Br. 7. The ALJ noted Dr. Duvall's borderline personality disorder diagnosis and Dr. Henning's citation to this diagnosis, but gave no reason for discrediting these assessments. Tr. 24. The ALJ did not cite nurse Jarrett's borderline personality disorder diagnosis. The ALJ offered no further discussion of Robertson's borderline personality disorder diagnosis. This reasoning also should not be sustained.

### D.    Effect of the ALJ's Omissions

The court must now consider the effect of the ALJ's improper analysis of Robertson's mental impairments. Robertson claims the ALJ erroneously omitted Dr. Duvall's PTSD diagnosis at step two in the sequential proceedings and failed to include work restrictions suggested by Drs. Duvall and Hennings in Robertson's RFC assessment. Pl.'s Opening Br. 8-9.

#### a.    Step Two Analysis

At step two in the sequential proceedings, the ALJ determines if the claimant has a "severe" impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment is "severe" if it "significantly limits your ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c), *see* also 20 C.F.R. §§ 404.1521, 416.921. Such an impairment must last, or be expected to last, twelve months. 20 C.F.R. §§ 404.1509, 416.909.

The ALJ's analysis at steps four and five must consider all of a claimant's impairments, both severe and non-severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). The court agrees that the ALJ did not provide appropriate reasons for omitting Robertson's PTSD from his step two

9 - FINDINGS AND RECOMMENDATION

findings. However, because the ALJ proceeded beyond step two in the sequential analysis, the court will consider the effect of his error in the ALJ's subsequent findings at steps four and five. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (holding an ALJ's step two omission harmless when the ALJ proceeded beyond step two in the sequential analysis). These consequences are discussed below.

### b. Work Restrictions

This court must determine the effect of the ALJ's failure to properly discredit work restrictions related to Robertson's mental impairments. Drs. Duvall and Hennings both suggested work restrictions. The record does not suggest that Robertson's nurse practitioners or therapists made work-related restrictions.

Dr. Duvall stated that Robertson's "day to day functioning is rather severely limited by 3 separate Anxiety Disorders, i.e. Social Phobia, PTSD, and to a lesser extent Obsessive-Compulsive Disorder." Tr. 179. Dr. Duvall continued that Robertson, "remains homebound *by preference* most of the time, based on her fears of being overwhelmed by anxiety if she has to deal with people." *Id.* (emphasis added). Dr. Duvall noted that Robertson last worked as a housekeeper and concluded that "with the treatment [Robertson] is in at present, it is possible that she could perform this type of low level work." *Id.* Dr. Duvall assigned no other work-related restrictions.

Examining psychologist Dr. Hennings assessed moderate limitations in Robertson's ability to understand and remember instructions, carry out detailed instructions, interact appropriately with the public, and get along with coworkers. Tr. 185-86. Dr. Hennings assessed no other work-related restrictions, writing,

10 - FINDINGS AND RECOMMENDATION

> Claimant is able to understand/remember and carry out simple tasks. Would have more difficulty with detailed tasks due to anxiety and depression. Due to anxiety, depression, and social phobia, claimant should not work with general public. Can work with other employees if only occasional interaction is needed.

Tr. 187.

The ALJ's RFC incorporates the limitations suggested by Drs. Duvall and Hennings. The ALJ restricted Robertson from contact with the general public, with occasional interaction with coworkers. Tr. 19. The ALJ also restricted Robertson to "simple routine tasks." *Id.*

The Ninth Circuit has repeatedly found an ALJ's errors harmless where "the ALJ's error . . . was inconsequential to the ultimate nondisability determination." *Carmickle v. Comm'r*, 533 F.3d 1155, 1162 (9th Cir. 2008) (quoting *Stout v. Comm'r*, 454 F.3d 1050, 1055 (9th Cir. 2005)). Because the improperly rejected opinions do not establish further restrictions, the ALJ's omissions at both step two and in his RFC assessments were inconsequential under this standard. This court will not recommend reversal for harmless error. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## II. Robertson's Obesity

Robertson finally contends that the ALJ failed to consider her obesity. Pl.'s Opening Br. 17. Robertson presently submits that she is five feet seven inches tall and weighs 210 pounds. Pl. Opening Br. 17. Robertson calculates her body mass index ("BMI")[3] at 32.9. *Id.*

Robertson failed to raise this argument at her hearing, where she was represented by

---

[3]BMI is "a formula for determining obesity. It is calculated by dividing a person's weight in kilograms by the square of the person's height in meters." Kenneth N. Anderson et al. eds., *Mosby's Medical, Nursing, & Allied Health Dictionary* ( 5th ed. 1998).

11 - FINDINGS AND RECOMMENDATION

counsel. She cannot now raise it for the first time before this court. *Burch*, 400 F.3d at 682.

The court additionally notes that Robertson does not cite the medical record. The claimant bears the burden of providing medical evidence of an impairment. *Yuckert*, 482 U.S. at 146 n.5. The record reflects Robertson's reports of her height and weight, showing that Robertson reported that she was five feet seven inches and weighed two hundred pounds in February 2007. Tr. 227. The record also shows that primary care physician Dr. Cowan characterized Robertson as "somewhat overweight" and stated that she weighed one hundred ninety one pounds. Tr. 253. No clinician measured Robertson's height, which is necessary to determine Robertson's BMI. The record contains no clinical BMI measurement.

Regardless of Robertson's failure to provide evidence of her obesity, Robertson's alleged BMI values does not reflect the obesity standard envisioned by the Commissioner in SSR 02-01p. The SSR states:

> [T]he [National Institute of Health] Clinical Guidelines describe a BMI of 25-29.9 as "overweight" and a BMI of 30.0 or above as "obesity."
>
> The Clinical Guidelines recognize three levels of obesity. Level I includes BMIs of 30.0-34.9. Level II includes BMIs of 35.0-39.9. Level III, termed "extreme" obesity and representing the greatest risk for developing obesity-related impairments, includes BMIs greater than or equal to 40. These levels describe the extent of obesity but they do not correlate with any specific degree of functional loss.
>
> SSR 02-1p at *2.

Relevant case law suggests the ALJ erroneously failed to consider obesity when a claimant had a BMI of 44. *Celaya v. Halter*, 332 F.3d 1177, 1179 (9th Cir. 2003). The *Celaya* court emphasized that such an excessive BMI was well over the "extremely obese" threshold

12 - FINDINGS AND RECOMMENDATION

indicated in the relevant SSR. *Id.* Because any obesity exhibited by Robertson is classified as "level I," this court does not find Robertson's alleged 32.9 BMI analogous to the *Celaya* claimant's BMI of 44, which is classified as "level III." *See* SSR 02-1p at *2.

Robertson finally asserts that her obesity impacts her mental impairments. Pl.'s Opening Br. 19. However, Robertson fails to articulate any theory explaining the impact of her obesity upon her impairments. Nor does the record support this non-existent theory. For all of these reasons, the ALJ had no duty consider Robertson's alleged obesity and any omission is without error.

**III.    The ALJ's Duty to Develop the Record**

Robertson claims the ALJ failed to develop the record. Pl.'s Opening Br. 6. However, her support for this argument addresses her own testimony and the ALJ's evaluation of Dr. Duvall. Robertson's testimony is addressed below.

Robertson also submits that "Dr. Duvall was not asked what plaintiff's mental capacities were," and that "the ALJ failed to clarify Plaintiff's mental capacities with Dr. Duvall, to Plaintiff's detriment." Pl.'s Opening Br. 10.

The Ninth Circuit has clearly stated that the ALJ's duty to develop the record is triggered when evidence is insufficient or when ambiguities arise. *Bayliss*, 427 F.3d at 1217. However, the ALJ has no duty to re-contact evaluating sources. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). Robertson's submission that the ALJ failed to develop the record with respect to Dr. Duvall therefore fails.

///

///

13 - FINDINGS AND RECOMMENDATION

IV. **Robertson's Credibility**

    a.     **Robertson's Testimony**

Robertson submitted written questionnaires to the record and testified at her March 2007 hearing. Tr. 114, 139-46, 293-333. Robertson first stated that her ability to work is limited by her depression, obsessive compulsive disorder, and social anxiety problems, due to, "worry about my children. I have an anxiety problem." Tr. 114. Robertson subsequently wrote about her daily activities, saying that she feeds and cares for her children, cleans, watches television, and puts her kids to bed. Tr. 139. She also stated, "I can't quit thinking of bad things so I'm sad and I have no energy a lot of the time," and added that she frequently cries and wears her nightclothes all day. Tr. 140. Robertson endorsed difficulties with her memory, and with completing tasks, concentrating, understanding, and getting along with others, stating that she could pay attention for one or two minutes "if I try real hard." Tr. 144. However, she also stated that she can follow written and spoken instructions. *Id.*

At her March 2007 hearing, Robertson testified that she could sit, stand, walk, and move without limitation. Tr. 302. Robertson stated that she cares for her three children and maintains her household (tr. 306, 308), but that her mother takes her shopping. Tr. 308. Regarding her anxiety, Robertson testified that it is "hard for me to be around people too long," and that she gets panic attacks at an unspecified frequency. Tr. 311. Robertson also stated that she has difficulty sleeping due to "thoughts" and that she has crying spells "at least twice a week." Tr. 312.

Robertson's counsel asked her if she is "obsessive about cleaning" and she responded that she did not "view it as a problem" because she likes things organized. Tr. 315. She stated that she cleans up after her children and that she does not like dirt. Tr. 317. Robertson said she must

14 - FINDINGS AND RECOMMENDATION

leave her house because of her children, and that she has to leave public places "two [out of] every five or six times I go out." Tr. 319. She also stated that she took Klonopin (an anti-anxiety medication) when she left her house "one time," and added that she requires this medication only "sometimes." Tr. 320. Robertson stated that she quit her night cleaning job "because I was scared," (tr. 322, 325-26) and quit other cleaning jobs because going into people's homes made her anxious. Tr. 323.

Regarding her concentration, Robertson affirmed that she can "concentrate on math, but not reading a book." Tr. 321.

Finally, Robertson stated that she did not think she could do any jobs cited by the vocational expert at her hearing because "its hard for me to leave my house, be around my stuff. I don't know. I just feel more comfortable around my kids, around where I know stuff, I guess. I don't like to go out of - - what I don't know." Tr. 332. Robertson also testified that she did not think she could establish a set routine of going to the same workplace everyday. Tr. 333.

  b. Analysis

Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged" the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. *Lingenfelter,* 504 F.3d at 1036 (citing *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with

personal knowledge of the claimant's functional limitations. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Id.* Once a claimant shows an underlying impairment, the ALJ may not, however, make a negative credibility finding "solely because " the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

Robertson alleges that the ALJ failed to state "clear and convincing" reasons for finding her not credible. Pl.'s Opening Br. 16. The ALJ noted that he "must make a finding on the credibility of the [claimant's] statements based on a consideration of the entire case record." Tr. 19. Though the ALJ discussed Robertson's daily activities and Robertson's reports to her medical providers (tr. 21-28), he did not make an identifiable credibility finding or conclusion. The only statement the ALJ made directly relating to Robertson's testimony noted, "Claimant's credibility is damaged by her inconsistent statements throughout the record regarding her marijuana use." Tr. 28. This does not amount to a sufficient credibility finding. The consequences of this improper analysis are discussed below.

## V.     The ALJ's Step Four and Five Findings

This court must determine the effect of the ALJ's errors upon his findings at steps four and five of the sequential proceedings. The reviewing court must credit erroneously rejected physician or claimant testimony "as a matter of law" when the ALJ has failed to provide legally sufficient reasons for rejecting such evidence. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (quoting *Smolen*, 80 F.3d at 1292). However, the reviewing court may also find an ALJ's error harmless when it can "confidently conclude that no reasonable ALJ, when fully crediting

16 - FINDINGS AND RECOMMENDATION

the testimony, would have reached a different disability determination." *Stout*, 454 F.3d at 1056.

This court must therefore determine whether, if the ALJ had credited Robertson's testimony and the improperly rejected aspects of the opinions of Drs. Duvall and Hennings, his subsequent RFC and hypothetical questions to the vocational expert at steps four and five of the sequential proceedings necessarily would have included limitations establishing disability. If the improperly omitted evidence establishes disability the court may not find the omission harmless. *Stout*, 454 F.3d at 1056.

The ALJ's hypothetical questions to the VE included RFC limitations supported by the medical evidence. Tr. 328. The ALJ's analysis of these limitations is discussed above. In making his findings based upon the VE's testimony, the ALJ did not include additional limitations suggested by Robertson's testimony and her counsel.

Robertson's counsel asked the vocational expert to consider a hypothetical individual restricted from "public contact." Tr. 334. The vocational expert affirmed that such an individual could perform the work indicated above. Tr. 334-35. Robertson's counsel then asked the vocational expert if an individual missing "two days a month of work because of mental symptoms" would be able to sustain employment. Tr. 335. The vocational expert replied that such a worker "could obtain the job, but she wouldn't keep the job for very long once that . . . began to be a pattern." *Id.*

Neither the medical evidence, nor Robertson's testimony, both discussed above, establish that Robertson's symptoms would necessitate two or more workplace absences per month. Her counsel's question thus has no evidentiary value. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001) (holding that questions to the vocational expert must be based upon substantial

17 - FINDINGS AND RECOMMENDATION

evidence in the record).

Regarding Robertson's additional symptom testimony, Robertson stated that she does not like to leave her house, but she did not state that she could not leave her house. In fact, she stated that at times when she leaving her house difficult, she took prescribed anxiety medication. Similarly, while Robertson stated that she did not think that she could work due to her anxiety, she did not describe circumstances or symptom testimony establishing that she is precluded from work activity at steps four or five of the sequential proceeding. For this reason the court can confidently conclude a reasonable ALJ, fully crediting Robertson's testimony, would have reached the same result. The ALJ's omission of Robertson's testimony is therefore harmless because it is "inconsequential to the ultimate nondisability determination." *Stout*, 454 F.3d at 1055. This court again notes that it will not recommend reversal for harmless error. *Burch*, 400 F.3d at 679.

The ALJ thus appropriately relied upon the vocational expert's testimony in his findings at steps four and five. *Osenbrock*, 240 F.3d at 1163-64. The ALJ's finding that Robertson could perform her past relevant work as well as additional work in the national economy is based upon an adequate RFC assessment and supported by appropriate vocational testimony. This finding should be affirmed.

## **CONCLUSION**

In summary, this court finds that the record supports the ALJ's finding that Robertson did not suffer from a disabling condition. The erroneously rejected testimony and medical evidence, if credited, do not establish additional RFC restrictions. Robertson additionally fails to show that the ALJ's steps four and five findings, based upon substantiated vocational testimony, were

18 - FINDINGS AND RECOMMENDATION

erroneous. The ALJ's errors were harmless for the reasons articulated at each instance above. This court will not recommend reversal for harmless errors. *Burch*, 400 F.3d at 679. The ALJ's findings should therefore be affirmed.

## RECOMMENDATION

The Commissioner's decision that Robertson did not suffer from disability and is not entitled to benefits under Titles II and XVI of the Social Security Act is based upon correct legal standards and supported by substantial evidence. The Commissioner's decision should be AFFIRMED and the case should be dismissed.

## SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due October 2, 2008. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

If objections are filed, a response to the objections is due October 16, 2008, and the review of the Findings and Recommendation will go under advisement with the District Judge on that date.

IT IS SO ORDERED.

DATED this 17th day of September, 2008.

_____

Dennis James Hubel
United States Magistrate Judge